WILLIAM A. CAMPBELL, RECEIVER, V. NOYES, NORMAN &
COMPANY ET AL.

FILED JUNE 9, 1904.   No. 13,556.

1. **Decree**: INTERPRETATION.   A decree wherein a party is directed to
pay a specific fund in his hands into court for distribution
among claimants thereto, will not be held to be a lien upon
the real estate of such party in favor of the claimants unless
it is provided by the decree that the claimants recover of the
party holding the fund, and that in default of payment exe-
cution may issue.

2. ———: ———.   Creditors of an insolvent debtor filed a bill
against the debtor, joining with him as defendant a bank to
whom the debtor was alleged to have made a fraudulent transfer
of chattels, the object of the bill being to cancel the mortgage and
subject the fund created by the sale of the chattels to their
claims.   The decree canceled the mortgage and ordered the
bank to pay the fund into court.   *Held*, that the decree did not
constitute a lien on the real estate of the bank.

ERROR to the district court for Johnson county: JOHN
S. STULL, JUDGE.   *Reversed.*

*L. C. Chapman* and *George A. Adams*, for plaintiff in
error William A. Campbell.

*S. P. Davidson* and *Hugh LaMaster*, for Noyes, Nor-
man & Co. et al.

*George Adams* and *Culver & Phillips*, for Kemper,
Hundley & McDonald Dry Goods Co. et al.

KIRKPATRICK, C.

This case presents for determination a contest between
plaintiff in error, William A. Campbell, receiver of the
Chamberlain Banking House and representing its general
creditors, and defendants in error, who claim a preferred
lien upon certain money in the hands of the receiver
realized from the sale of the real estate of the bank, con-

sisting of the banking house and the lot upon which it is situated. The banking house, hereinafter called the bank, is insolvent, and only a small per cent. of its liabilities can be paid. The trial court awarded defendants in error a preference over the general creditors, and the receiver prosecutes error to this court.

In order that a clear understanding may be had of the questions presented by the record, it will be necessary to give a brief history of the transactions leading up to the entry of the judgment complained of. In the year 1895 Renshaw & Company were engaged in the mercantile business in Crab Orchard, in Johnson county. At that time they were indebted to defendants in error, who are wholesalers, for goods. They were also indebted to the bank in a sum amounting to about $2,681. On November 6, 1895, Renshaw & Company executed a mortgage to the bank to secure the amount due it, and the bank immediately took possession of the stock of goods, and thereafter advertised the goods and sold them under its mortgage. Soon after the bank obtained its mortgage and took possession of the goods, the various defendants in error commenced actions in the county court of Johnson county against Renshaw & Company, prosecuted them to judgment, procured the issuance of executions, which were returned unsatisfied, and thereafter procured the bank to be garnished. The bank answered in the garnishment proceedings, denying that it was indebted to Renshaw & Company. The defendants in error generally took exceptions to the answer of the bank. None of the judgments obtained by defendants in error in the county court were ever transcripted to the district court. On June 1, 1896, the creditors of Renshaw Company, who had obtained their judgments in the county court, defendants in error herein, united in a creditors' bill asking to have the mortgage which Renshaw & Company had executed to the bank declared fraudulent and void, and to require it to pay the money, which it had realized from the sale of the stock of goods of Renshaw & Company, into court to be

applied in satisfaction of the judgments obtained in the county court.   The bank answered, setting up the *bona fides* of its mortgage.   Trial was had, and on November 8, 1900, a decree was entered holding that the mortgage in controversy was fraudulent and void, and ordering the bank to pay to the clerk of the court for the benefit of defendants in error, plaintiffs in the creditors' bill suit, the sum of $3,472.73, being the value of the goods sold by the bank under its mortgage, with interest thereon up to the date of the decree.   The bank prosecuted error proceedings from the decree so entered to this court, where the decree was affirmed.

In the meantime the bank had become insolvent, and on September 11, 1902, plaintiff in error was appointed and qualified as receiver, and took possession of all the property of the bank.   Thereupon, and on January 23, 1903, defendants in error commenced this proceeding against the bank, asking that they be allowed a preferred claim for the amount which the district court in the decree of November 8, 1900, directed the bank to pay to the clerk of the court for the satisfaction of the county court judgments, upon the ground that the decree of November 8, 1900, was of such a character as to become a lien upon the real estate of the bank, and thus make the claims of defendants in error superior to that of the general creditors.

Plaintiff in error, as receiver, resisted this application, claiming that the decree of November 8, 1900, was not a lien upon the real estate of the bank.   The trial court found against the receiver, and adjudged the claims of defendants in error prior liens upon the fund to be applied pro rata upon their several county court judgments.   The correctness of this judgment of the trial court is the question presented for determination in this case.

Before the trial of the case, the receiver, by order of the court, sold the real estate of the bank, consisting of the banking house and the lot upon which it stood.   Defendants in error objected to the confirmation of the sale, and it was thereupon agreed between all parties that the sale

should be confirmed and the money retained in the hands of the receiver, pending the final determination of this case.

Defendants in error seem not to attach importance to the fact that garnishment was had upon the bank, further than to contend that the creditors' bill to set aside the mortgage given by Renshaw & Company to the bank was more than a creditors' bill, in that it was in fact a suit against the garnishee because of an unsatisfactory answer. The controlling question in the case, however, seems to be whether the decree of November 8, 1900, is of such a character as to become a lien on the real estate of the bank.

For the purpose of ascertaining the full import of the judgment under consideration, it will be convenient to quote at some length from both the petition of defendants in error and the judgment itself. From the former we will quote the following:

"Wherefore these plaintiffs pray that an account may be taken of the amount due each of said plaintiffs upon its judgment against said F. D. Renshaw & Co., that it may be found, adjudged and decreed that the said plaintiffs and each of them obtain a lien upon the goods of the said F. D. Renshaw & Co., so taken possession of by the said Chamberlain Banking House and the proceeds of said goods; and that said liens are still valid and subsisting and binding upon said goods and the proceeds of the same in the possession of the defendant bank and prior to all other liens thereon; that said chattel mortgage so made to the Chamberlain Banking House be found and decreed to be fraudulent and void as to these plaintiffs and each of them, and that the said mortgage may be canceled and set aside, and out of the proceeds of the sale of said goods the said Chamberlain Banking House may be ordered and decreed to pay to these plaintiffs, or into this court for them, the amount of the respective claims against F. D. Renshaw, and for such other and further relief as may be just and equitable."

From the decree it will only be necessary to quote the following:

"It is, therefore, considered, ordered, adjudged and decreed that the chattel mortgage executed by F. D. Renshaw & Company to the Chamberlain Banking House on the 6th day of November, 1895, to secure the payment of $2,681.23, be and the same is declared to be absolutely null and void, and that the defendant, the Chamberlain Banking House, pay to the clerk of this court the said sum of $2,681.23, together with interest at the rate of seven per cent. per annum from the 6th day of November, 1895, being a total sum of $3,472.73, including interest, and that said sums be distributed pro rata to the several plaintiffs in this action, that is to say," etc.

It will be observed that, in the prayer of their petition, defendants in error sought only to have the chattel mortgage declared to be a nullity, under and by virtue of which the bank should obtain no rights or claim to the goods of the Renshaw Company or any moneys realized from the sale of such goods; and further, to have the goods, or the money realized from the sale thereof by the bank, made available for the satisfaction of their liens and claims against Renshaw & Company. From the judgment, it is clear that the court attempted, and we think, did give them all that they asked; that is to say, the mortgage was nullified and canceled, so that any rights under it conveyed to the bank were abolished; and as the goods were converted into money, the decree directs that the money be paid into the court for distribution among defendants in error.

We have, then, a decree by which a certain instrument is canceled, the result of which presumably creates a fund; and thereupon a direction to the party in whose possession the fund is to pay it over. But there is no recital here that one party shall have and recover of the other a sum certain, and that in default of payment execution shall issue. It does not seem to us that the decree under consideration is one upon which an execution could

have issued against the bank, to be levied, as in the case of an ordinary money judgment, upon any of its property, no more than an order issues to the bank to pay into the court a fund presumably in its hands. The decree clearly adjudicates that the bank has no claim or right to that fund; but we read this decree in vain for any intimation of an intention to render a general money judgment against the bank. We do not think we are now concerned with the question whether the court had jurisdiction to give judgment in favor of defendants in error against the bank for a specific sum of money, in default of payment of which execution should issue. It is sufficient to say that defendants in error neither asked for such relief nor did the court grant it.

In order that defendants in error may now have the relief granted them by the lower court in the case at bar, it ought to be made to appear that the decree under consideration, as that decree stood of record, would charge a prospective purchaser of the real estate of the bank that there was a valid and subsisting judgment against the bank upon which an execution might issue. The view we entertain is that this decree would not constitute such notice. He who inquired would have ascertained that a certain chattel mortgage executed to the bank had been canceled, and that the bank's claim upon the fund created by its assumption of possession and sale of the mortgaged chattels had been adjudicated adversely to the bank, and that it had been directed by the order of the court to pay this fund into court for distribution among certain claimants thereof.

In view of what has been said, it follows that the judgment of the district court, giving to the defendants in error a preference over the other creditors of the bank, is wrong, and ought not to stand. It is therefore recommended that the judgment be reversed and the cause remanded for further proceedings.

LETTON, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.